UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Southern Utah Wilderness Alliance, Natural Resources Defense Council, The Wilderness Society, | ) ) ) ) | |
| PLAINTIFFS, | ) ) ) | |
| | ) | Civ. No. |
| Dirk Kempthorne, in his official capacity as Secretary of the United States Department of the Interior, the United State Department of the Interior, the Bureau of Land Management, | ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This suit challenges the decision by the U.S. Department of the Interior and the Bureau of Land Management (BLM) authorizing a Denver-based company – Enduring Resources – to undertake a comprehensive natural gas development project along the unique and stunning White River in northeastern Utah (the "Rock House Project" or "the Project"). BLM has said that "the White River cuts a rugged, scenic trough into the high desert plains of the Uintah Basin" and that it "is one of the quiet places, where solitude and a sense of adventure are still very much a part of the outdoor experience."

2. The decision green-lights natural gas drilling and related development activities (including construction of drill pads and access roads) in the White River "wilderness character area." Among other things, the decision lifts out of suspension lease UTU-87137 which is located entirely within the area that BLM itself has identified has

wilderness character. The approved project activities will irreparably harm and impair the area's remarkable wilderness characteristics.

3. Moreover, this decision sanctions activities that violate limits on air emissions established under the Clean Air Act for the protection of human health and the environment.

4. As explained below, BLM has failed to fully consider, evaluate, and disclose the impacts of the Project in violation of the National Environmental Policy Act (NEPA). In addition, BLM decision violates the Federal Land Policy and Management Act (FLPMA) by failing to ensure "compliance with applicable pollution standards or implementation plans." Finally, BLM has violated its own regulations which require that it consider "all factors or circumstances relevant to the particular case."

## JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*, and its implementing regulations; the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701 *et seq.*, and its implementing regulations; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*; and 28 U.S.C. § 1331 (federal question).

6. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

7. Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e) because the United States Department of the Interior and its agency, the Bureau of Land Management, are headquartered in Washington, D.C. Plaintiffs also reside in Washington, D.C.

**PARTIES**

8.  Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE (SUWA) is a non-profit environmental membership organization dedicated to the sensible management of all public lands within the State of Utah, to the preservation and protection of plant and animal species, and to the preservation of Utah's remaining wild lands. SUWA has offices in Utah and in Washington, D.C. SUWA has members in all fifty states and several foreign countries. SUWA members use and enjoy public lands in and throughout Utah for a variety of purposes, including scientific study, recreation, wildlife viewing, hunting, aesthetic appreciation, and financial livelihood. SUWA members frequently visit and recreate (*e.g.*, boating, camping, hiking, birding, sightseeing, and enjoying solitude) throughout the lands comprising the Rock House Project area, which are the subject of this complaint. SUWA brings this action on its own behalf and on behalf of its adversely affected members.

9.  Plaintiff NATURAL RESOURCES DEFENSE COUNCIL (NRDC) is a non-profit environmental membership organization with more than 400,000 members throughout the United States. NRDC members use and enjoy public lands in and throughout Utah, and in the Rock House Project area in particular, for a variety of purposes, including: recreation, birding, solitude, boating, viewing cultural resources and, scientific study. NRDC has had a longstanding and active interest in the protection of the public lands in Utah. With its nationwide membership and a staff of lawyers, scientists, and other environmental specialists, NRDC plays a leading role in a diverse range of land and wildlife management and resource development issues. Over the years, NRDC has participated in a number of court cases involving resource development issues throughout the American West, including Utah. NRDC brings this action on its own behalf and on behalf of its members.

10.     Plaintiff THE WILDERNESS SOCIETY (TWS) is a non-profit national leadership organization founded in 1935. TWS works to protect America's wilderness and to develop a network of wild lands through public education, scientific analysis, and advocacy. The Wilderness Society's goal is to ensure that future generations will enjoy the clean air, water, wildlife, beauty, and opportunities for recreation and renewal that pristine deserts, mountains, forests and rivers provide. The Wilderness Society views protecting wilderness quality and other sensitive Utah BLM managed lands as vital to achieving its mission. TWS has worked for years to protect BLM wilderness quality and other sensitive lands in Utah. The Wilderness Society's members use the public lands in the Rock House Project area for a variety of purposes, including recreation and aesthetic appreciation. The Wilderness Society brings this action on its own behalf and on behalf of its members.

11.     SUWA, NRDC, TWS, and their members' interests are directly affected and irreparably harmed by the BLM's DR/FONSI, which approved highly intrusive natural gas development in the Rock House Project area that will damage, among other things, a unique, high desert canyon environment along with the air quality of the area. SUWA, NRDC, TWS, and their members also have a substantial interest in seeing that the BLM complies with the terms and requirements of NEPA and FLPMA.

12.     Defendant DIRK KEMPTHORNE is sued in his official capacity as Secretary of the United States Department of the Interior. In that capacity, he is responsible for ensuring that the Department and the agencies within the Department, including the Bureau of Land Management, comply with all applicable laws and regulations, including NEPA and FLPMA.

13. Defendant the UNITED STATES DEPARTMENT OF THE INTERIOR is the federal agency responsible for managing just under 500 million acres of federal public lands for a variety of competing resources, including oil and gas development, as well as for the protection of the natural and human environment. The Department of the Interior is required to comply with the NEPA and FLPMA.

14. Defendant the BUREAU OF LAND MANAGEMENT is an agency within the United States Department of the Interior that is directly responsible for carrying out the Department's obligations under statutes and regulations governing mineral leasing and development, including NEPA and FLPMA. The BLM manages approximately 262 million acres of public lands across the nation and roughly 23 million acres in Utah.

## FACTS GIVING RISE TO PLAINTIFFS' CAUSES OF ACTION

15. On December 18, 2007, BLM issued its DR/FONSI for Enduring Resources' (Enduring's) Saddletree Draw Leasing and Rock House Development proposal and the accompanying environmental assessment (EA).

16. The Rock House Project area includes a wide diversity of public lands, including steep canyons, shoreline along the White River, and high plateaus interspersed with pinyon and juniper forests. It "is one of the quiet places, where solitude and a sense of adventure are still very much a part of the outdoor experience." .

17. The Rock House Project area is a popular destination for hiking, wildlife viewing, camping, and boating.

18. The Project area includes a popular hiking trail which leads from the White River to an overlook known as the "Goblin City Overlook." Goblin City is "an area of spectacular and fanciful geologic forms." Visited by trappers in the early 1800s, members of

the John Wesley Powell expedition also hiked 37 miles from the Green River to view its formations in 1871.

19. The Project area includes a popular camping site – the mouth of Saddletree Canyon – for families and others floating the White River by canoe or raft.

20. The Project area includes over 4,800 acres identified by BLM as being wilderness quality (i.e., containing the requisite elements for entry into the National Wilderness Preservation System).

21. The entire Project area is proposed for wilderness designation in America's Red Rock Wilderness Act (H.R. 1919/S. 1190), a bill introduced in Congress.

22. The Project area includes the proposed White River area of critical environmental concern (ACEC).

23. The Project area includes portions of the White River that are proposed for a Wild and Scenic River suitability determination.

24. The entire Rock House Project area provides habitat for animals such as mule deer, pronghorn, elk, golden eagles, prairie falcons, desert cottontail, black-tailed and white-tailed jackrabbit, coyote, gray fox, striped and spotted skunk, mountain lion, and bobcat.

25. The Project area falls under the purview of BLM's Book Cliffs Resource Management Plan (RMP).

26. Enduring and its contractor, Buys & Associates, Inc., prepared the Enduring Resources' Saddletree Draw Leasing and Rock House Development Proposal EA (Rock House EA). BLM reviewed and commented on the applicant prepared EA.

27. The Project area encompasses approximately 4,826 acres, of which, roughly 70% are lands managed by the BLM. The project would involve up to sixty natural gas wells

from 24 well drilling pads (13 located on BLM managed lands), the construction of up to 8.4 miles of new road, and the construction of up to 8.9 miles of new surface pipeline.

28. The Rock House EA was prepared to evaluate the above described project, including the issuance of a suspended lease identified by the serial register number UTU-81737.

29. Prior to the release of the Rock House EA in June 2007, BLM had provided the public with three different versions of this document. These three EAs all considered variations of the selected alternative, though without the leasing component found in the last iteration. The first version was released for public comment on May 2, 2005; the second version was released for public comment on June 7, 2005; and the third version was released for public comment on October 20, 2006.

30. In the DR/FONSI, BLM stated that all public comments submitted regarding previous versions of the EA were taken into account in the preparation of the final Rock House EA. DR/FONSI at 4.

31. On June 22, 2007, BLM released a draft version of the Rock House EA for public comment and review. The public comment period closed on July 23, 2007.

32. SUWA, NRDC, and TWS (collectively "SUWA") submitted timely comments to BLM regarding the Rock House EA on July 19, 2007. SUWA's comments expressly incorporated the comments of Ms. Megan Williams, which Ms. Williams submitted on SUWA's behalf.

33. SUWA's comments detailed, among other things, concerns regarding independent evaluation of applicant provided information; failures by BLM to take a hard look at various resource issues (such as air quality, wilderness character, sound, visual

7

resources, wildlife, recreation, etc.); nonconformance with the relevant land use plan; a failure to evaluate cumulative impacts; and a failure to prepare an EIS.

34. SUWA also submitted timely comments on prior versions of the Rock House EA that was made available for public comment, including the EA made available on October 20, 2006.

35. In its comments on the October 20, 2006, EA, SUWA submitted comments prepared by Spectrum Engineers and Kolano & Saha – regarding natural quiet and project related noise impacts.

36. BLM is analyzing or has recently approved several oil and gas development projects near the Rock House Project area. These projects include: the Resource Development Group Uintah Basin Natural Gas Project, the Kerr-McGee Bonanza Area project, the Chapita Wells-Stagecoach Area Natural Gas Development, and the Greater Deadman Bench Oil and Gas Producing Region project.

37. BLM received 55,725 comment letters and e-mails regarding this project from the public, 55,484 of these letters opposed the Project.

38. The Rock House Project would result in harmful impacts, not yet fully analyzed by BLM, to natural quiet in the White River area, to the proposed White River ACEC, to the suitability determination of the proposed White River Wild and Scenic River, and to air quality in the region.

39. When BLM released the final version of the Rock House EA on December 18, 2007, along with the DR/FONSI, the EA contained new information regarding air quality analysis and alternatives analysis that had not been contained in the draft version of the Rock House EA available for public comment on June 22, 2007.

40. Among other things, air quality modeling completed for the Rock House EA in December 2007 indicated emission levels that will exceed national ambient air quality standardss established under the Clean Air Act, 42 U.S.C. § 7401 *et seq.* This same modeling indicates that the project will exceed the Clean Air Act's prevention of significant deterioration increments for certain criteria pollutants.

41. The final version of the Rock House EA also contained applicant-submitted information discussing the difficulty or technical infeasibility of the alternatives suggested by SUWA.

42. On January 17, 2008, SUWA submitted a timely request for State Director Review regarding the DR/FONSI for the Rock House EA, asking that the decision of the BLM's Vernal Field Office be set aside and remanded for full compliance with NEPA and FLPMA.

43. The State Director denied SUWA's request on February 1, 2008, and affirmed the Rock House EA and DR/FONSI.

## FIRST CAUSE OF ACTION
### Violation of FLPMA Implementing Regulations
*(Failure to Consider "All Factors or Circumstances" Relevant to this Case)*

44. Plaintiffs incorporate herein by reference paragraphs 1-43 above.

45. BLM's review of a request for State Director Review "shall include all factors or circumstances relevant to the particular case." 43 C.F.R. § 3165.3(b).

46. The State Director's decision on a request for State Director Review "shall represent the final Bureau decision from which further review may be obtained." 43 C.F.R. § 3165.3(d).

47. SUWA's request for State Director Review included comments prepared by Spectrum Engineers and provided to BLM by SUWA in 2006 as part of SUWA's comments on an earlier version of the EA.

48. In the DR/FONSI, BLM stated that all public comments submitted on previous versions of the EA were taken into account in the preparation of the final Rock House EA. DR/FONSI at 4.

49. The State Director refused to consider Spectrum Engineers' comments in his review of SUWA's request for State Director Review.

50. SUWA's request for State Director Review included comments prepared by Ms. Megan Williams which analyze and critique the DR/FONSI, including third party materials which were not submitted to BLM by Buys & Associates until December 2007, after the close of the public comment period.

51. The State Director refused to consider Ms. Williams comments that were prepared specifically to review and critique the DR/FONSI and materials that were not available to the public until after the DR/FONSI was issued.

52. Defendants' refusal to consider "all relevant factors or circumstances relevant" to SUWA's request for State Director Review violated FLPMA's implementing regulations and was arbitrary, capricious and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

### SECOND CAUSE OF ACTION
### Violation of NEPA and Its Implementing Regulations
*(Failure to Prepare an Environmental Impact Statement)*

53. Plaintiffs incorporate herein by reference paragraphs 1-52 above.

54. When a federal agency is not certain whether an EIS is required, it must prepare an EA. *See* 40 C.F.R. §§ 1501.3, 1501.4, and 1508.9. If the EA concludes that the proposed Project will have no significant impact on the human environment, the agency may issue a FONSI, and proceed with the proposed action. If the agency concludes that there may be significant impacts, then it must prepare an EIS. *See* 40 C.F.R. § 1501.4.

55. When evaluating significance, NEPA and its implementing regulations require BLM to evaluate "[w]hether the action threatens a violation of Federal, State, or local law or requirements imposed for the protection of the environment." 40 C.F.R. § 1508.27(b)(10).

56. NEPA and its implementing regulations require BLM to independently evaluate all environmental information provided by Enduring's third party consultants that prepared the Rock House EA. *See* 40 C.F.R. § 1506.5(a)-(b).

57. BLM's decision to prepare a finding of no significant impact, and not an environmental impact statement, was inappropriately influenced by Enduring's third-party contractor, Buys & Associates who in addition to preparing the Rock House EA was at the same time working on behalf of Enduring and other member of industry to oppose SUWA.

58. The Rock House Project's impacts may have a significant effect on the environment.

59. The Rock House Project will likely result in emissions that exceed air quality standards established by the Clean Air Act; will adversely impact and harm the unique White River corridor, and combined with other completed, ongoing, and future projects in the area will result in significant changes and degradation of the surrounding environment.

60. Defendants' failure to prepare an EIS to evaluate these impacts violated NEPA and its implementing regulations and was arbitrary, capricious and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

### THIRD CAUSE OF ACTION
**Violation of NEPA and its Implementing Regulations**
*(Failure to Fully Analyze Cumulative Impacts)*

61. Plaintiffs incorporate herein by reference paragraphs 1-60 above.

62. NEPA and its implementing regulations require BLM to consider the cumulative environmental impacts of the Project when added to other past, present, and reasonably foreseeable future actions. *See* 40 C.F.R. §§ 1508.25(c)(3), 1508.7.

63. Defendants' failure to analyze the cumulative impacts of all past, present, and reasonably foreseeable future actions in the Rock House Project area – including but not limited to air quality, recreation, the proposed Wild and Scenic River eligibility determination of the White River, and the proposed White River ACEC – violated NEPA and its implementing regulations and was arbitrary, capricious and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

### FOURTH CAUSE OF ACTION
**Violation of NEPA and its Implementing Regulations**
*(Failure to Take a "Hard Look" at Project Impacts)*

64. Plaintiffs incorporate herein by reference paragraphs 1-63 above.

65. NEPA and implementing regulations require agencies to take a "hard look" at the environmental impacts of proposed actions using the best available scientific information. *See e.g.*, 40 C.F.R. § 1508.9.

66. The EA fails to adequately analyze and disclose the environmental consequences of the proposed oil and gas development and leasing on numerous resources,

including but not limited to air quality and impacts to natural quiet. The EA also fails to use the best available scientific information to analyze the project's effects on these resources.

67.     Defendants' failure to take a "hard look" at all impacts of the Rock House Project violated NEPA and its implementing regulations and was arbitrary, capricious or otherwise not in accordance with law. *See* 5 U.S.C. § 706; 40 C.F.R. § 1502.9

## FIFTH CAUSE OF ACTION
### Violation of FLPMA and its Implementing Regulations
*(The Project Violates the Clean Air Act).*

68.     Plaintiffs incorporate herein by reference paragraphs 1-67 above.

69.     BLM has the authority to regulate "the development of the public lands." 43 U.S.C. § 1732.

70.     BLM shall require that "[e]ach land use authorization shall . . . "[r]equire compliance with air and water quality standards established pursuant to applicable federal or State law." 43 C.F.R. § 2920.7(b)(3).

71.     The State Director's decision denying SUWA's request for State Director Review acknowledged that BLM "may be required to deny an action that would result in a Clean Air Act violation. See 43 U.S.C. § 1732(b)."

72.     Air quality modeling prepared in December 2007 by Enduring Resources' contractor – Buys & Associates –acknowledges that the Rock House project as approved by BLM will violate the Clean Air Act.

73.     Defendants have violated FLPMA and its implementing regulations, and has acted arbitrarily, capriciously, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

## SIXTH CAUSE OF ACTION
### Violation of FLPMA and its Implementing Regulations
*(The Project Violates the Book Cliffs Resource Management Plan)*

74. Plaintiffs incorporate herein by reference paragraphs 1-73 above.

75. BLM is required to manage public lands in conformance with approved land use plans. 43 U.S.C. § 1732.

76. BLM's own regulations reinforce this obligation stating that "[a]ll future resource management authorizations and actions . . . and subsequent more detailed or specific planning, shall conform to the approved plan." 43 C.F.R. § 1610.5-3(a).

77. Currently, the Book Cliffs RMP governs the Project area.

78. The Book Cliffs RMP places no surface occupancy restrictions on portions of Section 30, T10S, R23E, Salt Lake Base Meridian (SLBM).

79. The Rock House EA evaluated, and the Decision Record approved, a water pipeline in NENE quarter, quarter of Section 30 (T10S, R23E, SLBM); a water and gas line across the SWNE quarter, quarter of Section 30 (T10S, R23E, SLBM); and a water and gas line across the NESE quarter, quarter of Section 30 (T10S, R23E, SLBM).

80. These sections all are listed as having no surface occupancy restrictions in the Book Cliffs RMP.

81. Defendants have violated FLPMA and its implementing regulations, and has acted arbitrarily, capriciously, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Dirk Kempthorne, Secretary of the U.S. Department of the Interior, the Department of the Interior, and the Bureau of Land Management, and that the Court:

(1)     Declare that defendants have violated the National Environmental Policy Act and the Federal Land Policy and Management Act and their implementing regulations as set forth above; and

(2)     Declare unlawful and set aside the Rock House EA and DR/FONSI until the defendants are in compliance with the National Environmental Policy Act and the Federal Land Policy and Management Act; and

(3)     Award injunctive relief directing defendants to prohibit Enduring Resources and its contractors from engaging in any further on-the-ground disturbance in the Rock House Project area until the BLM has complied with the National Environmental Policy Act and the Federal Land Policy and Management Act; and retain jurisdiction of this action to ensure compliance with its decree;

(4)     Award plaintiffs the costs they have incurred in pursuing this action, including attorney's fees and costs; and

(5)     Grant such other and further relief as is proper.

Respectfully submitted.

Sharon Buccino (D.C. Bar # 432073)
Natural Resources Defense Council
1200 New York Ave., N.W. Suite 400
Washington, D.C. 20005
(202) 289-6868

Stephen H.M. Bloch (UT Bar #7813)
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, UT 84111
(801) 486-3161

Date: March 10, 2008

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS** SUWA, et al.

**DEFENDANTS** Kempthone, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __11001__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __11001__
(IN U.S. PLAINTIFF CASES ONLY)

(c) ATTORNEYS
Sharon Buccino, Natural Resources Defense Council
1200 New York Avenue, NW, Suite 400
Washington, DC 20005  (202) 289-6868 ph

Case: 1:08-cv-00411
Assigned To : Sullivan, Emmet G.
Assign. Date : 3/10/2008
Description: TRO/PI

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x...)
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**☐ A. Antitrust**
☐ 410 Antitrust

**☐ B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☒ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other)   OR   ☐ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 USC § 706(2)(a) (Challenge to final agency action under Administrative Procedures Act)

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐    DEMAND $    Check YES only if demanded in complaint
JURY DEMAND: ☐ YES    ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES    ☒ NO    If yes, please complete related case form.

DATE 3/10/08    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.