IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, *et al.* <br><br> Plaintiffs, <br> v. <br><br> DIRK KEMPTHORNE, in his official capacity As the Secretary of the United States Department of the Interior *et al.* <br><br> Defendants. | Civ. No. 08-0411 (EGS) <br><br> Defendants' and Defendant-Intervenor's Opposition and Cross Motion for Summary Judgment Due June 9, 2008 |
| ENDURING RESOURCES, LLC, <br><br> Defendant-Intervenor | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION TO SUPPLEMENT THE RECORD**

Plaintiffs submit this memorandum in support of their motion to supplement the record of this case with two items that were produced after the federal defendants approved the Rock House project which show that the Bureau of Land Management's ("BLM's") decision at issue here was not correct. Supplementation is also appropriate because several of plaintiffs' causes of action arise under the National Environmental Policy Act ("NEPA") and the supplemental materials bear directly on plaintiffs' claims that the BLM violated NEPA.

## BACKGROUND

The Enduring Resources' Saddletree Draw Leasing and Rock House Development Proposal Environmental Assessment UT-080-07-671 ("EA" or "Rock House EA") at issue in this matter was prepared by Buys & Associates, a third party contractor hired by the project proponent Enduring Resources LLC. See AR 11114-15 (EA at 6-44 to -45). The EA includes a background concentration figure of 25 micrograms per cubic meter ("$\mu g/m^3$") for the 24-hour maximum average of $PM_{2.5}$. AR 11014 (EA at 3-26).[1] The EA's sole citation for this figure is a personal communication between Buys & Associates and a staff member at the Utah Department of Environmental Quality – Utah Division of Air Quality ("UDEQ-UDAQ") in November 2005. BLM based its assertion in the EA that the proper background concentration figures for the 24-hour average maximum of $PM_{2.5}$ was 25 $\mu g/m^3$ <u>exclusively</u> on this personal communication. See AR 11014, 11094 (EA at 3-26, 6-24).

## STANDARD OF REVIEW

"'It is well settled that judicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made.'" The Humane Soc'y v. Dep't of Commerce, 432 F. Supp. 2d 4, 14 (D.D.C. 2006) (quoting Envtl. Def. Fund v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981). See also Camp v. Pitts, 411 U.S. 138, 142 (1973) (stating that focal point for judicial review should be existing administrative record).

---

[1] $PM_{2.5}$ (fine particles 2.5 microns in diameter or smaller), a pollutant regulated under the Clean Air Act, poses significant risks to human health; short- and long-term exposure can lead to increased premature mortality, increased hospital admissions and emergency room visits, and the development of chronic respiratory disease. See National Ambient Air Quality Standards for Particulate Matter, 71 Fed. Reg. 2620, 2627-28 (Jan. 17, 2006).

Nevertheless, the D.C. Circuit has recognized a number of exceptions to this general rule and permitted supplementation of the administrative record when one or more of these exceptions are met. See Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (discussing and listing exceptions that would permit the use of extra-record evidence). Supplementation is appropriate when "'evidence arising after the agency action shows whether the decision was correct or not' or 'in cases arising under [NEPA.]'" Humane Soc'y, 432 F. Supp. 2d at 14 (quoting Esch, 876 F. 2d at 991) (additional citations omitted). See also Nat'l Trust for Historic Pres. v. Blanck, 938 F. Supp. 908, 915 n.10 (D.D.C. 1996) (citing Esch).

## ARGUMENT

SUWA seeks to supplement the record with a denial by the State of Utah, in an April 28, 2008 letter, that it provided BLM with background concentration estimates or figures for $PM_{2.5}$. In this April 28, 2008 letter to the BLM regarding another proposed energy project in the Uinta Basin – the West Tavaputs Plateau Natural Gas Full Field Development Plan – the State of Utah denied that the background concentration figures for $PM_{2.5}$ cited in that document were provided by UDEQ-UDAQ as alleged. See State of Utah, Office of the Governor, Public Lands Policy Coordination, Subject: West Tavaputs Plateau Natural Gas Field Development Plan, Draft Environmental Impact Statement (DEIS) Project No. 08-8885, at 3 (April 28, 2008) (excerpts attached hereto as Exhibit 1). The state's letter explains that "[b]ackground for $PM_{2.5}$ was not provided by the [Utah Division of Air Quality], but there is a value listed for it."). Id. (emphasis added). A complete copy of the state's letter is available on-line at its website: http://www.governor.utah.gov/planning/RDCC%20Comments/08-8885.pdf. The state's

letter responded to a draft version of the West Tavaputs Plateau DEIS, a document first made available for public review in February 2008.  See West Tavaputs Plateau Natural Gas Full Field Development Plan, Draft Environmental Impact Statement ("West Tavaputs Plateau DEIS") 3-18, 9-29 (Feb. 2008) (citing to 2005 personal communication with UDEQ-UDAQ for background concentrations of various pollutants, including $PM_{2.5}$) (excerpts attached hereto as Exhibit 2).  A complete copy of the West Tavaputs DEIS is available on-line at the BLM's website: and http://www.blm.gov/ut/st/en/fo/price/energy/Oil_Gas/Draft_EIS.html.

The same background concentration level for the 24-hour maximum average of $PM_{2.5}$ – 25 $\mu g/m^3$ – listed in the West Tavaputs Plateau DEIS is provided in the Rock House EA.  Both the Rock House EA and the West Tavaputs Plateau DEIS were prepared by the same contactor, Buys & Associates, and both give the same reference for the background concentration figure, a personal communication with a State of Utah employee, as the only source for this key piece of information.  Compare AR 11014, 11114-15 (EA at 3-26, 6-44 to -45) with West Tavaputs Plateau DEIS at 3-18, 7-2, 9-29.

Supplementation of the record in this case meets the D.C. Circuit's well-established exceptions "that additional evidence may be considered where . . . 'evidence arising after the agency action shows whether the decision was correct or not' or 'in cases arising under the National Environmental Policy Act.'"  Human Soc'y, 432 F. Supp. 2d at 14 (quoting Esch, 876 F.2d at 991) (additional citations omitted) (granting motion to supplement).  See LeBoeuf, Lamb, Green & Macrae, LLP v. Abraham, 215 F. Supp. 2d 73, 82 (D.D.C. 2002) (granting, in-part, motion to supplement); Nat'l Trust for Historic Pres., 938 F. Supp. at 916 n.10 (citing Esch and permitting supplementation).

Given the State of Utah's candid statement that it did not provide the $PM_{2.5}$ background figure cited in the West Tavaputs Plateau DEIS – and therefore the Rock House EA – the BLM's reliance on a 25 µg/m$^3$ background concentration figure for the 24-hour maximum average of $PM_{2.5}$ is unsupported by any factual evidence in the record. Thus this case is "on-all-fours" with the decisions cited above in <u>Humane Society v. Department of Commerce</u> and others from this court where supplementation was permitted to consider "evidence arising after the agency action shows that the decision" was incorrect. <u>See</u> 432 F. Supp. 2d at 14. BLM's reliance on this unsubstantiated background concentration figure is particularly problematic in light of the information that SUWA provided from a $PM_{2.5}$ monitor not far from the project area that showed 24-hour maximum average concentrations well above the number cited by BLM. <u>See</u> AR 11494 (listing 24-hour average concentrations as high as 63.3 µg/m$^3$ and 55.7 µg/m$^3$, both well above the Clean Air Act's national ambient air quality standard limit of 35 µg/m$^3$ for the 24-hour maximum average of $PM_{2.5}$). Here, BLM's use of a discredited $PM_{2.5}$ background concentration figure is a key element to determine whether it may have violated the Clean Air Act's substantive requirements and should have prepared an environmental impact statement for the Rock House project and likewise whether BLM complied with NEPA's hard look mandate.[2]

---

[2] Should the Court decline to grant plaintiffs' motion to supplement the record, plaintiffs request that the Court take judicial notice of the State of Utah's letter and the excerpts from the West Tavaputs Plateau DEIS, both of which are available on-line at the following websites: http://www.governor.utah.gov/planning/RDCC%20Comments/08-8885.pdf (State of Utah website) and http://www.blm.gov/ut/st/en/fo/price/energy/Oil_Gas/Draft_EIS.html (BLM website). <u>See</u> <u>Nebraska v. EPA</u>, 331 F.3d 995, 998 n.3 (D.C. Cir. 2003) (taking judicial notice of information on agency website).

## **CONCLUSION**

Based upon the foregoing, the Court should grant plaintiffs' motion to supplement the record with the State of Utah's April 28, 2008 letter to the BLM and excerpts from the West Tavaputs Plateau DEIS referred to in the state's letter.

      /s/  Sharon Buccino
Sharon Buccino (DC Bar # 432073)
Natural Resources Defense Council
1200 New York Ave., NW, Suite 400
Washington, DC  20005
T:  202-289-6868
F:  202-289-1060
sbuccino@nrdc.org

Stephen H.M.  Bloch (admitted *pro hac vice*)
David Garbett
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, UT  84111
T:  801-486-3161
F: 801-486-4233
steve@suwa.org

*Counsel for Plaintiffs*

Dated:  May 12, 2008

# EXHIBIT 1

# Plaintiffs' Memorandum in Support of Motion to Supplement the Administrative Record

# SUWA v. Kempthorne Civil No. 08-411 (EGS)



**State of Utah**

JON M. HUNTSMAN, JR.
*Governor*

GARY R. HERBERT
*Lieutenant Governor*

Office of the Governor
PUBLIC LANDS POLICY COORDINATION

JOHN HARJA
*Director*

April 28, 2008

Brad Higdon
Planning and Environmental Coordinator
Bureau of Land Management
Price Field Office
125 South 600 West
Price, Utah 84526

SUBJECT:   West Tavaputs Plateau Natural Gas Field Development Plan
           Draft Environmental Impact Statement (DEIS)
           Project No. 08-8885

Dear Mr. Higdon:

    The State of Utah appreciates the opportunity to work with the Bureau of Land Management (BLM) as a formal cooperating agency in the preparation of this Draft Environmental Impact Statement (DEIS) for the proposed West Tavaputs Plateau Natural Gas Field Development in Carbon and Duchesne Counties. The state also appreciates the BLM's extension of similar status to local governmental entities that have a stake in the planning area under consideration. The state firmly believes that cooperative discussions among the various landowners and regulatory agencies will lead to the best possible final product.

    The state, local governments, and BLM have invested considerable time and effort working together in this impact analysis. The state's expectation is that this process will continue and lead to a well-reasoned and well-formulated full field development. Further, while the state considered local governments' input during preparation of its comments, the BLM should also fully consider the comments submitted directly by local governments.

    The attached comments and concerns are offered in the spirit of cooperation through disclosure, analysis and adherence to the provisions of law, regulation, good governance and common sense. The state recognizes impact analyses as a dynamic process that will continue into the future, and reserves the right to supplement these comments as necessary. The state looks forward to resolution of these issues as a cooperating agency through the preparation of the Final EIS.

Utah Code section 63-38d-401, *et seq.*, provides standards for state policies, plans, programs, and processes related to use, development and protection for federal lands and resources on federal lands in the State of Utah. It is the policy of the state that this legislation reflects criteria which must be considered during federal planning processes for federal lands. The State of Utah looks forward to working with the BLM to harmonize state, local, and BLM plans towards our shared stewardship responsibilities.

The State of Utah also recognizes the high density of spectacular rock art, archaeological sites, historical sites, and other cultural resources in Nine Mile Canyon and the West Tavaputs project area. We appreciate that the Bureau of Land Management has already been working with our State Historic Preservation Office under Section 106 of the National Historic Preservation Act. We support their comments and encourage the BLM to continue to work with the State Historic Preservation Office to consider potential effects and develop proactive solutions to the challenging resource issues in this project area. Careful analysis of cumulative and indirect impacts from any proposed drilling in the canyon bottoms, from dust due to traffic in the canyon itself, and indirect effects resulting from potential increased site visitation will require detailed analysis in the final EIS. The State Historic Preservation Office looks forward to working with BLM in completing this analysis.

The state, through the Public Lands Policy Coordination Office (PLPCO), contracted with the Bureau of Economic and Business Research at the University of Utah which completed an economic impact study of the oil and gas exploration and production industry in the Uinta Basin titled *The Structure and Economic Impact of Utah's Oil and Gas Exploration and Production Industry: Phase I - the Uinta Basin*. This study was followed by the *Phase II – Carbon and Emery Counties* study. The full Phase I study is attached for your consideration as Attachment B, and the Phase II study is attached for your reference as Attachment C.

In 2006, the Utah Legislature adopted an energy policy requiring streamlined permitting to expedite issuance of permits for energy-related projects. Utah has a process to perform this function through its Department of Environmental Quality. The Price BLM Office should commit to utilizing this established process in the review of such applications.

Additional State of Utah comments and concerns are attached for you review. Please direct any other written questions regarding this correspondence to myself or call Jonathan G. Jemming at (801) 537-9023.

Sincerely,

John Harja
Director

## Attachment A
## State Comments and Concerns

*Indirect Impacts Analysis*

Significant impacts relate to the indirect effects of the project on the natural resources of the State of Utah. Yet, Chapter 4 is lacks reference to, or analysis of, certain elements of the project's indirect impacts on the environment. Please review Chapter 4 and provide analysis of the indirect impacts of the project in all appropriate contexts.

*Air Quality*

Upon review of the subject DEIS, the following specific comments relating to modeling are submitted:

**Chapter 3, Table 3.3-3**

Background for PM2.5 was not provided by the UDAQ, but there is a value listed for it in the DEIS. The UDAQ does not currently require PM2.5 modeling for new sources, and therefore has not developed background PM2.5 values for studies such as this EIS. The EPA has not finalized its guidance on modeling new sources for compliance with the new PM 2.5 NAAQS. Methods for modeling secondary particle formation as well as treatment of background need to be developed before there are any regulatory requirements. There should be some discussion regarding the current guidance on PM 2.5 modeling.

**Chapter 3, Table 3.3-3**

The background PM10 data has recently been revised to include recent PM measurements in the Vernal area. Please correct the background for PM10 to the following:
  24-hour PM10:    63.3 micrograms/cubic meter
  Annual PM10:     10.4 micrograms/cubic meter

**Appendix J, AERMOD Modeling report, Section 5.1**

The UDAQ models unpaved haul road impacts up to the edge of the road's right-of-way. In the DEIS, the modeling used a buffer zone of 100 meters between the roads and model receptors. This would tend to under-estimate impacts from the road. Unless the area is fenced off and considered private property, the area must be treated as ambient air. The NAAQS was developed to protect wildlife and vegetation, in addition to human health. Modeling should be performed to assess the maximum impact on the NAAQS, which would mean placing receptors along right-of-ways, and in all areas that are considered ambient air.

# EXHIBIT 2

# Plaintiffs' Memorandum in Support of Motion to Supplement the Administrative Record

# SUWA v. Kempthorne Civil No. 08-411 (EGS)

U.S. DEPARTMENT OF THE INTERIOR
Bureau of Land Management

# West Tavaputs Plateau
# Natural Gas Full Field Development Plan
# Draft Environmental Impact Statement

Prepared by the Price Field Office

*February 2008*

Selma Sierra
Utah State Director

UT-070-05-055
DES 08-06

solvents are some of the major sources of $NO_x$ and VOC that help to form ozone. Sunlight and hot weather cause ground-level ozone to form in harmful concentrations in the air. As a result, it is generally known as a summertime air pollutant. Ozone can be transported great distances and therefore contributes to air pollution issues on a regional scale. Primary health effects from $O_3$ exposure range from breathing difficulty to permanent lung damage. Ground-level ozone also contributes to plant and ecosystem damage.

Note that the NAAQS has been recently revised to reflect changes to the $PM_{10}$ and $PM_{2.5}$ standards. The changes reflect a tighter $PM_{2.5}$ 24-hour standard for the 98th percentile of a three year average [lowered from 65 micrograms per cubic meter ($\mu g/m^3$) to 35 $\mu g/m^3$] and elimination of the $PM_{10}$ annual standard. These changes are illustrated in the **Table 3.3-3** below.

Under the Prevention of Significant Deterioration (PSD) provisions of the Clean Air Act (CAA), incremental increases of specific pollutant concentrations are limited above a legally defined baseline level. Many national parks and wilderness areas are designated as PSD Class I. The PSD program protects air quality within Class I areas by allowing only slight incremental increases in pollutant concentrations. Areas of the State not designated as PSD Class I are classified as Class II. For Class II areas, greater incremental increases in ambient pollutant concentrations are allowed as a result of controlled growth. The PSD increments for Class I and II areas are presented in **Table 3.3-3**. **Figure 3.3-2** presents a regional map indicating the location of the WTP Project Area and surrounding areas of special concern. The closest Class I areas are Arches National Park (65 miles south) and Canyonlands National Park (85 miles south).

| Table 3.3-3. | Ambient Criteria Pollutant Concentrations in the Uinta Basin | | | | |
|---|---|---|---|---|---|
| Pollutant | Averaging Period(s) | Uinta Basin Background Concentration[a] ($\mu g/m^3$) | NAAQS ($\mu g/m^3$) | PSD Class I Increment ($\mu g/m^3$) | PSD Class II Increment ($\mu g/m^3$) |
| $SO_2$ | Annual | 5 | 80 | 2 | 20 |
|  | 24-hour | 10 | 365 | 5 | 91 |
|  | 3-hour | 20 | 1,300 | 25 | 512 |
| $NO_2$ | Annual | 17 | 100 | 2.5 | 25 |
| $PM_{10}$ | Annual | 10 | NA | 4 | 17 |
|  | 24-hour | 28 | 150 | 8 | 30 |
| $PM_{2.5}$ | Annual | 9 | 15 | None | None |
|  | 24-hour | 25 | 35 | None | None |
| CO | 8-hour | 1,111 | 10,000 | None | None |
| CO | 1-hour | 1,111 | 40,000 | None | None |
| $O_3$[b] | 8-hour | 105 | 157 | None | None |

[a] Source: Prey (2005). Data represent DAQ estimates for rural areas within the Uinta Basin.
[b] EPA published a final rule on August 3, 2005 identifying areas for which the one-hour ozone standard was revoked. In that notice, the one-hour ozone standard was revoked, effective June 15, 2005, for all areas of Utah.

*Hazardous Air Pollutants*

Hazardous air pollutants (HAPs) are those pollutants that are known or suspected to cause cancer or other serious health effects, such as reproductive effects or birth defects, or adverse environmental impacts. The EPA has classified 187 air pollutants as

# LIST OF PREPARERS

| Bureau of Land Management – Lead Agency Preparers | | |
|---|---|---|
| **Area of Expertise/Responsibility** | **Name** | **Affiliation** |
| Decision Maker | Selma Sierra | BLM Utah State Office |
| Authorized Officer | Roger Bankert | BLM Price Field Office |
| Core Team/Project Management | Brad Higdon | BLM Price Field Office |
| Core Team/Project Management | Don Stephens | BLM Price Field Office |
| Core Team/Project Management | Nathan Sill | BLM Price Field Office |
| Air Quality | Craig Nicholls<br>Scott Archer | BLM National Science and Technology Center |
| Cultural Resources, Native American Consultation, Ethnography | Julie Howard | BLM Utah State Office |
| Paleontological Resources | Mike Leschin | BLM Price Field Office |
| Vegetation and Invasive Weeds | Karl Ivory | BLM Price Field Office |
| T&E and Sensitive Plants | Karl Ivory | BLM Price Field Office |
| Riparian Areas, Wetlands | Karl Ivory | BLM Price Field Office |
| Forest Management | Karl Ivory | BLM Price Field Office |
| Fire Management | Hal Stevens | BLM Price Field Office |
| Wildlife: Terrestrial/Aquatic | David Waller | BLM Price Field Office |
| T&E, Sensitive Species, Animals | David Waller | BLM Price Field Office |
| Migratory Birds | David Waller | BLM Price Field Office |
| Soils | Jeffrey Brower | BLM Price Field Office |
| Hydrology/Water Rights & Quality | Jeffrey Brower | BLM Price Field Office |
| Floodplains | Jeffrey Brower | BLM Price Field Office |
| Geology and Minerals | Don Stephens | BLM Price Field Office |
| Oil and Gas | Don Stephens | BLM Price Field Office |
| Oil and Gas Drilling | Eric Jones | BLM Moab Field Office |
| NEPA Compliance | Brad Higdon | BLM Price Field Office |
| Right of Way | Mike Robinson | BLM Price Field Office |
| Socioeconomic & Environ. Justice | Bill Stevens | BLM Price Field Office |
| Range Management | Mike Tweddell | BLM Price Field Office |
| Wilderness | Tom Gnojek | BLM Price Field Office |
| Recreation | Dennis Willis | BLM Price Field Office |
| Wild and Scenic Rivers | Dennis Willis | BLM Price Field Office |
| Visual Resources | Rob Sweeten | BLM Moab Field Office |
| Wild Horse & Burros | Mike Tweddell | BLM Price Field Office |

| Third-Party Contractors | | |
|---|---|---|
| **Area of Expertise/Responsibility** | **Name** | **Affiliation** |
| Principal in-Charge | Marty Buys | Buys & Associates |
| Project Manager | Dawn Martin | Buys & Associates |
| Assistant Project Manager | Tyler Ashcroft | Buys & Associates |
| Administrative Record/Formatting | Kendell Johnson | Buys & Associates |
| GIS | Mark Weitz | Buys & Associates |
| Formatting and Editing | Kendell Johnson | Buys & Associates |
| Geology, Minerals, and Paleontology | Dave Nicholson | Buys & Associates |
| Air Quality | Don Douglas<br>Deb Bain | Buys & Associates |
| Soils | Dave Nicholson | Buys & Associates |
| Water Resources (including floodplains) | Dave Nicholson | Buys & Associates |
| Land Use and Status | Tyler Ashcroft | Buys & Associates |
| Rangeland Management and Wild Horses | Melissa Bridendall | Buys & Associates |
| Vegetation | Melissa Bridendall | Buys & Associates |
| Wildlife | Melissa Bridendall<br>Dawn Martin | Buys & Associates |
| Threatened, Endangered, and Sensitive Species | Melissa Bridendall<br>Dawn Martin | Buys & Associates |
| Recreation | Tyler Ashcroft | Buys & Associates |
| Cultural Resources/Ethnography | Shina duVall | Buys & Associates |
| Environmental Justice | Shina duVall | Buys & Associates |
| Socioeconomics and Environmental Justice | Tyler Ashcroft<br>Laura Doze | Buys & Associates |
| Transportation | Tyler Ashcroft | Buys & Associates |
| Health and Safety | Tyler Ashcroft | Buys & Associates |
| Visual Resources | Tyler Ashcroft | Buys & Associates |
| Noise | Don Douglas<br>Dawn Martin | Buys & Associates |
| Areas of Special Designation | Tyler Ashcroft | Buys & Associates |
| Cultural Resources/Ethnography | Jody Patterson<br>John Fritz | Montgomery Archaeological Consultants |
| Cultural Resources/Ethnology | Molly Molenaar | Summit Applied Anthropology |
| Socioeconomics and Environmental Justice | Lloyd Levy | Lloyd Levy Consulting |

# 9.0   REFERENCES

Aberle, D.F.  1982.  The Peyote Religion among the Navaho.  2nd Edition.  Chicago and London: The University of Chicago Press.

ACGIH.  2003.   Threshold Limit Values for Chemical Substances and Physical Agents and Biological Exposure Indices.

Adams, E.C.  1982.  Walpi Archaeological Project:  Synthesis and Interpretation.  Flagstaff: Museum of Northern Arizona.

Adams, E.C.  1991.  The Origin and Development of the Pueblo Katsina Cult.  University of Arizona Press, Tucson.

Addo, J.Q., T.G. Sanders, and M. Chenard.  2004.  Road Dust Suppression: Effect on Maintenance Stability, Safety, and the Environment, Phases 1-3, U.S. Department of Transportation University Transportation Centers Program, May 2004.

Alley, J.P. Jr.  1982.  Prelude to Dispossession:  The Fur Trade's Significance for the Northern Utes and Southern Paiutes.  *Utah Historical Quarterly*  50(2):104-123.  Salt Lake City.

Andersen, D.E., O.J. Rongstad, and W.R. Mytton.  1989.  Response of Nesting Red-Tailed Hawks to Helicopter Overflights.  *The Condor*, Vol. 91, No. 2. (May 1989), pp. 296-299.

Apa, A.D.  1998.  Habitat Use and Movements of Sympatric Sage and Columbian Sharp-Tailed Grouse in Southeastern Idaho.  Dissertation, University of Idaho, Moscow, USA.

Archer, S.  2006.  Personal Communication with Scott Archer, BLM National Science and Technology Center.  July 19, 2006.

Arnold, S.  2007.  Preliminary Results of Vandalism Study in Range Creek Canyon.  Paper presented at the UPAC Winter 2007 Meetings.

Bailey, G. and R.G. Bailey.  1986.  A History of the Navajos: The Reservation Years.  Santa Fe: School of American Research Press.

Barfield, B.J., R.C. Warner, and C.T. Haan.  1981.  Applied Hydrology and Sedimentology for Disturbed Areas, Oklahoma Technical Press, Stillwater, Oklahoma.

Barrowclough, G.F., J.G. Groth, L.A. Mertz, and R.J. Gutierrez.  2006.  Genetic Structure of Mexican Spotted Owl (*Strix occidentalis lucida*) Populations in a Fragmented Landscape.  *The Auk* 123(4):1090–1102.

Patterson, R.L. 1952. The Sage-Grouse in Wyoming. Sage Books, Inc., Denver, Colorado, USA.

Patterson, J. and A. Whitfield. 2004. Monitoring and Additional Cultural Resource Inventory of Bill Barrett Corporation's Stone Cabin 3-D Seismic Program, Carbon County, Utah. Montgomery Archaeological Consultants, Moab. Project No. U-04-MQ-1238bs (Part 1 of 3) on file at the Division of State History, Salt Lake City.

Perlich, Pam S. 2003. Uintah County: Profile and Data Book. Bureau of Economic and Business Research. David Eccles School of Business. University of Utah. Prepared in partnership with the Economic Development Corporation of Utah. September 2003.

Perlich, Pam S. 2005. Carbon County Industry Impact Study: Alternative Employment Scenarios. Bureau of Economic and Business Research. David Eccles School of Business. University of Utah. August 2005.

Peterson, J.A. 1998. Utah's Black Hawk War. Salt Lake City: University of Utah Press.

Pettit, J. 1990. Utes: The Mountain People. Boulder: Johnson Books.

Pojor, T.M. and D.C. Bowden 2004. Neonatal Mule Deer Fawn Survival in West-Central Colorado. *Journal of Wildlife Management* 68(3):550–560.

Pope, C.A. and J. Jones. 1990. Value of Wilderness Designation in Utah. *Journal of Environmental Management* 30:157-174.

Prey, Dave. 2005. Utah Division of Environmental Quality – Division of Air Quality (UDAQ). Personal Communication with Jon Torizzo.

Price, D. and L.L. Miller. 1975. Hydrologic Reconnaissance of the Southern Uinta Basin, Utah and Colorado, State of Utah, Department of Natural Resources, Technical Publication No. 49.

Price Municipal Corporation. 2001. Financial Statements, Year Ended June 30, 2001. Retrieved 04-28-06 from http://www.sao.state.ut.us/lgr/municipal/2001/01cfpric.pdf.

Price Municipal Corporation. 2004. Price City General Plan. Adopted April 13, 2004, by the Price City Council. Available from the city.

Price Municipal Corporation. 2005. Financial Statements, Year Ended June 30, 2005. Retrieved 04-28-06 from http://www.sao.state.ut.us/lgr/municipal/2005/05mfpric.pdf.

Price Sun Advocate. 2005a. Board Vote Closes East Carbon High. April 26, 2005, p.1. Retrieved 04-06-06 from http://www.sunad.com/index.php?tier=56.

Price Sun Advocate. 2005b. School District Starts Year with Transitions and Climbing Enrollment. August 25, 2005, p.1. Retrieved 04-06-06 from http://www.sunad.com/index.php?tier=56.