UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, ) <br> NATURAL RESOURCES DEFENSE ) <br> COUNCIL, THE WILDERNESS SOCIETY, ) <br>       ) <br> Plaintiffs, ) <br>       ) <br> v. ) <br>       ) <br> DIRK KEMPTHORNE, in his official ) <br> capacity as Secretary of the United States ) <br> Department of the Interior, the UNITED ) <br> STATES DEPARTMENT OF THE INTERIOR, ) <br> the BUREAU OF LAND MANAGEMENT, ) <br>       ) <br> Federal Defendants, ) <br>       ) <br> ENDURING RESOURCES, LLC, ) <br>       ) <br> Defendant-Intervenor ) | Case: 1:08-cv-00411 <br> Next Scheduled Court Deadline: <br> Defendants' Cross-Motion for <br>    Summary Judgment, <br> Due June 9, 2008 <br> Judge Louis Oberdorfer |

FEDERAL DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD

Federal Defendants hereby oppose Plaintiffs' May 12, 2008 Motion to Supplement the Record (Docket # 24). That motion asks this Court to order supplementation of the administrative record with two documents which relate to a natural gas project completely independent of and located in a different county than the project at issue in this action. The documents are intended to show that the environmental assessment ("EA") challenged here relied on an incorrect air quality figure for a pollutant known as $PM_{2.5}$. However, as Plaintiffs readily acknowledge in the memorandum supporting their motion, Mem. at 1, these documents post-date the decision challenged in this case. For this reason, Defendant U.S. Bureau of Land Management ("BLM") did not consider them in making its decision. Plaintiffs' motion should be denied because judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.,* is properly limited to the record before the agency at the time of its decision.

Importantly, the question in this case is not, as Plaintiffs posit, whether the BLM's decision was "correct." Mem. at 2. Rather, the sole question, under the applicable APA standard of review, is whether the agency's decision, based on the information before it during the administrative process, was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 377 (1989). Although courts have recognized limited exceptions to this record review rule, Plaintiffs have not met their burden here of demonstrating the applicability of any of these exceptions. Supplementation of the record is therefore unwarranted and Plaintiffs' motion should be denied.

**Factual Background**

Plaintiffs challenge BLM's decision to approve and authorize, on a programmatic level, natural gas production by Defendant-Intervenor Enduring Resources, Inc., on public land near the White River in Uintah County, Utah. The "Rock House" project, as it is been referred to by the parties, involves drilling of up to sixty natural gas wells from 24 well pads on state, private and

federal lands.  BLM's decision provides general authorization for those aspects of the project on or under federal land pursuant to a BLM-issued oil and gas lease, number UTU-81737, referred to as the Saddletree Draw lease.  Additional site-specific authorization of each on-the-ground component of the project is necessary before the lessee may undertake ground-disturbing activity.  AR 11331.  BLM has undertaken such authorization with respect to the specific project components currently under way, in particular, the drilling of the first five of the planned wells and construction of associated facilities.  *See* Joint Proposed Schedule and Parties' Stipulation as to Allowed Oil and Gas Activities at 2 (Docket # 4).   By agreement of the parties, the remaining project components are on hold, pending a decision of this Court on the merits.  *Id.* at 3-4.

Plaintiffs ask the Court to supplement the administrative record with two documents: (1) an April 28, 2008 letter to BLM from the State of Utah's Public Lands Policy Coordination Office (PLPCO) in connection with the West Tavaputs Plateau natural gas development project; and (2) excerpts from a draft environmental impact statement ("EIS") for that project, which provide context for the letter.  The documents relate to an air quality measure for existing background concentrations of $PM_{2.5}$.  Plaintiffs contend BLM was incorrect in relying on a background concentration figure for $PM_{2.5}$ of 25 micrograms per cubic meter (maximum 24-hour average) in the challenged  Environmental Assessment ("EA"), although Plaintiffs never indicate what they believe the correct figure is.  As authority for this figure, the EA cites a "[p]ersonal [c]ommunication" with Mr. Dave Prey of the Utah Division of Environmental Quality - Division of Air Quality ("UDAQ").  AR 11014.  Plaintiffs contend the 25 microgram figure has been "discredited," Mem. at 5, and that BLM's reliance on it is therefore improper.  They seek to supplement the record to support, *by inference only*, this unfounded theory.

2

As an initial matter, Plaintiffs' request to supplement the record with extra-record documents is legally unfounded because they cannot satisfy any exception to the rule limiting judicial review to the administrative record. In any event, the record shows that the argument they are attempting to develop with the proffered documents is incorrect. UDAQ commented on the draft EA and despite raising several concerns, never questioned the background concentrations for $PM_{2.5}$. AR 1169. In addition, Mr. Dave Prey of UDAQ sent an email on November 30, 2005 to the contractor preparing the EA entitled "Uintah County Background Concentrations." *See* attached exhibit at 1. In it, he recites the figure of 25 micrograms for $PM_{2.5}$, and explains that the "background values are DAQ estimates for rural areas of Utah, and don't represent a particular station's data." *Id.* He further notes that the values "are still current." *Id.*[1] In light of these facts, Plaintiffs' theory that BLM improperly relied on the figure is untenable.

## Argument

**I.    Judicial review is properly limited to the administrative record.**

The Supreme Court has emphasized the strict limitations the APA imposes on judicial review:

> We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must "stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the decision must be vacated and the matter remanded to [the agency] for further consideration."

*Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978), quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973). If the reviewing court cannot review the challenged action based on the record before it, "the proper course, except in rare circumstances, is to remand to the agency for

---

[1] Shortly, the United States will formally supplement the record with Mr. Prey's November 30, 2005 email, which was inadvertently omitted from the administrative record.

3

additional investigation or explanation." *Florida Power & Light v. Lorion,* 470 U.S. 729, 744 (1985).

Both the Supreme Court and the D.C. Circuit have emphasized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142; *Fla. Power & Light Co.,* 470 U.S. at 743–44; *Safe Extensions, Inc. v. F.A.A.*, 509 F.3d 593 (D.C. Cir. 2007). Sound reasons exist for this policy. As the D.C. Circuit explained in *Doraiswamy v. Sec'y of Labor*, 555 F.2d 832, 839-40 (D.C. Cir.1976), and reaffirmed this year in *Bismullah v. Gates*, 514 F.3d 1291, 1300-1301 (D.C. Cir. 2008), judicial review is confined to the administrative record because administrative functions are committed by statute to the Executive Branch:

> This circumscription, which the Court has consistently honored in other cases, stems from well ingrained characteristics of the administrative process. The administrative function is statutorily committed to the agency, not the judiciary. A reviewing court is not to supplant the agency on the administrative aspects of the litigation . . . . The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based . . . ."

514 F.3d at 1300 (internal citations and footnotes omitted); *see also Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 793 (D.C. Cir.1984) (the record for the reviewing court is limited to "that information before the [agency] at the time of [its] decision . . . thus excluding *ex post* supplementation of the record by either side."); *Mail Order Ass'n of Am. v. U.S. Postal Serv.,* 2 F.3d 408, 433-34 (D.C. Cir.1993) (same).

Consequently, courts may not act as finders of fact when reviewing agency actions under the APA. And they should presume an agency has "properly designated the administrative record absent clear evidence to the contrary." *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 55 (D.D.C. 2003). Nonetheless, Plaintiffs contend this Court should deviate from these principles,

4

pursuant to two exceptions to the record review rule: first, because the documents they proffer show that the agency was incorrect on the background concentration of $PM_{2.5}$, and second, because this is a NEPA case. Mem. at 4. As explained below, each contention is meritless.

II. **Plaintiffs have not shown that the limited exception allowing supplementation of the administrative record in certain circumstances in NEPA cases is applicable here.**

Plaintiffs contend the Court should order supplementation of the record because this is a NEPA case, citing *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989); *Humane Society v. United States Dept of Commerce,* 432 F.Supp.2d 4, 14 (D.D.C. 2006); *LeBebouef, Lamb, Green & Macrae, LLP v. Abraham,* 215 F. Supp.2d 73, 82 (D.D.C. 2002); and *National Trust for Historic Preservation v. Blanck*, 938 F.Supp. 908 (D.D.C.,1996). Beyond citing these cases, plaintiffs offer no explanation how a NEPA exception to the record review rule could be applicable here. Moreover, none of the cases Plaintiffs cite even involve NEPA.

In *Esch*, a case involving the Agriculture Adjustment Act of 1938, 7 U.S.C. § 1385, the D.C. Circuit listed eight exceptions to the record review requirement that had been recognized by various other courts. The seventh listed exception is identified as "cases arising under [NEPA]" but it had no application in *Esch*. Instead, the court's resolution turned on the fact that the aggrieved parties – farmers challenging the suspension of their farm subsidy benefits – had been denied administrative hearings and an explanation for the adverse administrative decision rendered against them. *Esch*, 876 F.2d at 988, 992. The D.C. Circuit concluded that, where documents are actually considered by an agency but omitted from the record, supplementation is appropriate. 876 F.2d at 992. Such a circumstance does not exist here. The West Tavaputs Plateau documents were not omitted from the record; they post-date it, and could not have been relied upon by the agency. Thus *Esch* lends no support to Plaintiffs' argument.

5

Plaintiffs' argument reveals a fundamental misunderstanding of the standard of review in APA cases. This Court is charged with determining whether BLM's decision was arbitrary and capricious, an abuse of discretion, or contrary to law. 5 U.S.C. § 706(2)(A). If the Court finds the record does not provide an adequate basis to support BLM's reliance on the figure provided by UDAQ, then the appropriate course is to remand the matter to BLM for further consideration. *See Camp*, 411 U.S. at 143. Plaintiffs may not create their own record for review in the district court.

Their argument assumes the law affords a blanket exception to the record rule in NEPA cases, but this assumption would allow the exception to swallow the rule. Not only do Plaintiffs fail to cite a single NEPA case, they also fail to explain how an exception to record review in NEPA cases would apply. Further, several courts have found the *Esch* exceptions to be dicta or have distinguished *Esch*. *See e.g. Beverly Enter. v. Herman*, 130 F. Supp. 2d 1, 8 n.2 (D.D.C. 2000) (noting that the exceptions are limited); *Peterson Farms I v. Espy,* 1994 WL 26331, 15 F.3d 1160 (D.C.Cir. 1994) (unpublished) (Esch exceptions are "dicta"). The Second Circuit's decision in *National Audubon Soc'y v. Hoffman*, 132 F.3d 7 (2d Cir. 1997), cited with approval in *Sierra Club v. Peterson*, 185 F.3d 349, 369 (5th Cir. 1999), *vacated on other grounds*, 228 F.3d 559, offers an example of when the NEPA exception might be applied, explaining that

> consideration of extra-record evidence may be appropriate in the NEPA context to enable a reviewing court to determine that the information available to the decision-maker included a complete discussion of environmental effects and alternatives.

132 F.3d at 15. The documents proffered by Plaintiffs shed no light on the completeness of BLM's examination of the environmental effects and alternatives. Instead, they are offered to show only that BLM employed an erroneous air quality figure, a contention based on an inference and contradicted by the record itself. As discussed, UDAQ commented on the draft EA and raised

6

no concern about the air quality figure, and Mr. Prey's email clearly demonstrates that UDAQ did provide the figure. Thus, Plaintiffs have failed to show why the NEPA exception is applicable.

**III.   The exception allowing supplementation of the AR with post-decisional evidence showing whether the agency decision was correct is inapplicable.**

As noted above, the EA at issue in this case recites a background concentration for $PM_{2.5}$ of 25 micrograms per cubic meter. Curiously, plaintiffs do not indicate what they believe the correct background concentration to be, yet they suggest the figure is incorrect, and argue that the Court may supplement the record with post-decisional evidence to show "whether the decision was correct or not." Mem. at 4. In an attempt to discredit the background concentration figure, they proffer PLPCO's letter which states (in the first sentence of its third attached comment): "Background for $PM_{2.5}$ was not provided by [UDAQ], but there is a value for it in the [draft West Tavaputs Plateau EIS]." Based solely on this sentence, Plaintiffs argue that because the 25 microgram figure for $PM_{2.5}$ has been "discredited," and that BLM's reliance on it in the EA for the Rock House project is "unsupported by any factual evidence in the record." Mem. at 5. Plaintiffs even take the larger leap of assuming that, if unsupported, BLM "might have violated the Clean Air Act's substantive requirements" as well as NEPA. *Id.*

Whatever Plaintiffs may attempt to infer, the sentence does not state that the 25 microgram figure in the draft EIS was incorrect, and this is not the only possible inference. PLPCO may simply have wanted to clarify that regulatory uncertainty existed, attributable to the fact that EPA "[had] not finalized its guidance on modeling new sources for compliance with the new $PM_{2.5}$ [National Ambient Air Quality Standards]," and UDAQ "does not currently require $PM_{2.5}$ modeling for new sources," as the following sentences in the letter state. But regardless of how

7

the sentence is construed, it is clear that UDAQ, through Mr. Prey's email, provided the figure of 25 micrograms for $PM_{2.5}$ and that the values were at the time "still current." Mr. Prey's email was before the agency during its NEPA analysis, and the 2008 PLPCO letter, which originated after the decision, was not. As the D.C. Circuit explained in *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788 (D.C. Cir. 1984), "[t]o review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." 749 F.2d at 792.

      Plaintiffs contend the instant case is "on all fours" with *Humane Society*, where supplementation was allowed. That is a strained view. The decision challenged there authorized certain research on endangered steller sea lions in the northern Pacific Ocean. The agency prepared an environmental assessment and finding of no significant impact, which concluded that the research projects would not have a significant environmental impact for purposes of NEPA and therefore no EIS was required. Thereafter, the agency announced that it had reexamined its position and believed the effects of the research projects might be significant, and indicated it intended to prepare an EIS. However, plaintiffs filed suit before an EIS was prepared. Supplementation of the record by adding the agency announcement was appropriate because it contradicted its earlier finding that the impacts of the project would not be significant for purposes of NEPA. The PLPCO letter which plaintiffs seek to have added to the record here serves no comparable purpose. Nor does it even suggest that BLM's reliance on UDAQ's information from Mr. Prey was incorrect.

      Importantly, a "court's role [in APA cases] is to evaluate whether [the agency's] projections represent arbitrary or capricious exercises of its authority, not whether they are

accurate." *BCCA Appeal Group v. U.S. E.P.A.*, 355 F.3d 817, 832 (5th Cir. 2003). It defies logic to suggest that BLM's reliance on this heretofore uncontradicted communication was anything but reasonable, and amounts to the kind of "Monday morning quarterbacking" decried in *Airport Communities Coalition v. Graves*, 280 F. Supp. 2d 1207, 1213 (W.D. Wash. 2003). There the Court explained that if it were to consider new information in its analysis, it would "effectively transform that analysis into *de novo* review, a level of review for which the court is not authorized." *Id.* The same is true here. Consideration of these post-decisional documents here would render the court's review *de novo*. As the Supreme Court has made abundantly clear, "the role of a court in reviewing the sufficiency of an agency's consideration of environmental factors is a limited one, limited both *by the time* at which the decision was made and by the statute mandating review. *Vermont Yankee Nuclear Power Corp.*, 435 U.S. at 555 (1978). In such circumstances, the exception allowing supplementation of the administrative record with post-decisional evidence of correctness is simply inapplicable.

## Conclusion

For the foregoing reasons, Federal Defendants respectfully request that the Court deny plaintiffs' motion to supplement the record.[2]

May 23, 2008                                        Respectfully submitted,

---

2/ Finally, Plaintiffs ask this Court, in the event it declines to order supplementation, to take judicial notice of the two documents. This is improper. Courts take judicial notice of facts, not whole documents. *See* Fed. R. Evid. 201(b) ("a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). Moreover, because plaintiff has not identified the specific facts in these documents that it wishes the court to take judicial notice of, plaintiff has not furnished the Court with the "necessary information" required by Rule 201(d) ("[a] court shall take judicial notice if requested by a party and supplied with the necessary information").

                                                        RONALD J. TENPAS
                                                        Assistant Attorney General

                                                             /S/ John S. Most
                                                        JOHN S. MOST (Virginia Bar #27176)
                                                        Trial Attorney, Natural Resources Section
                                                        Environment & Natural Resources Division
                                                        United States Department of Justice
                                                        P.O. Box 663
                                                        Washington, D.C. 20044
                                                        (202) 616-3353, (202) 305-0274 (fax)
                                                        email john.most@usdoj.gov

                                                        Counsel for Defendants

OF COUNSEL

JOHN W. STEIGER
Office of the Solicitor
Department of the Interior
Suite 6201 - Federal Building
125 S. State Street
Salt Lake City, Utah  84138
(801)524-5677, (801)524-4506 (fax)

**Certificate of Service**

      I hereby certify that on May 23, 2008, a copy of the foregoing was served on counsel of record noted below by filing it electronically using the Court's ECF system.

*Counsel for Plaintiffs:*

Sharon Buccino (D.C. Bar # 432073)
NATURAL RESOURCES DEFENSE COUNCIL
1200 New York Avenue, N.W.
Suite 400
Washington, D. C.  20005
289-6868

Stephen H.M. Bloch (UT Bar #7813)
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, Utah 84111
(801) 486-3161

*Counsel for Defendant-Intervenor:*

Jonathan L. Abram
jlabram@hhlaw.com
Kirsten Friedel Roddy
kfroody@hhlaw.com
HOGAN AND HARTSON LLP
555 13th Street, N.W.
Washington, d. C.  20004-1109
Tel: (202) 637-5600

Rebecca W. Watson
rwwatson@hhlaw.com
HOGAN AND HARTSON LLP
One Tabor Center, Suite 1500
1200 Seventeenth Street
Denver, Colorado 80202
Tel: (303) 899-7300

Laura Lindley
llindley@bjorklindley.com
Kathleen C. Schroder
kschroder@bjorklindley.com
BJORK LINDLEY LITTLE PC
1600 Stout Street, Suite 1400
Denver, Colorado 80202
(303) 892-1400


                                                 /S/ John S. Most
                                                  JOHN S. MOST

# Debra Bain

**From:** Chad Powell [cpowell@buysandassociates.com]
**Sent:** Thursday, April 03, 2008 2:07 PM
**To:** 'Debra Bain'
**Subject:** FW: Uintah County Background Concentrations


Chad Powell
Air Quality Specialist
Buys & Associates, Inc.
(303) 531-6105 x274   (303) 531-6106 Fax
-----Original Message-----
From: Dave Prey [mailto:dprey@utah.gov]
Sent: Wednesday, November 30, 2005 2:31 PM
To: jtorizzo@buysandassociates.com
Subject: Re: Uintah County Background Concentrations

Those background values are DAQ estimates for rural areas of Utah, and dont represent a
particular station's data. They are still current.  If you are near other sources, and are
over the Class II SIL, the DAQ would like those other sources modeled as part of the
analysis.

PM2.5 values for that area, based on maximum PM2.5/PM10 ratios of 0.9 observed is:
 PM2.5 (ug/m3)
   Annual  9
   24-hour  25


>>> "Jon Torizzo" <jtorizzo@buysandassociates.com> 11/30/05 12:42 PM >>>
Dave:

Can you verify/update the following background pollutant data we have for Uintah Basin?
Also, do you have any background data for PM2.5?  Can you also cite the source of the
data, and the means for establishing the short-term back ground concentrations (ie, high-
second high, etc.).

> SO2 (ug/m3)
>
> Annual     5
>
> 24-hour    10
>
> 3-hour     20
>
> NO2 (ug/m3)
>
> Annual    5
>
> PM10 (ug/m3)
>
> Annual 10
>
> 24-hour  28
>
> CO (ug/m3)
>
> 8-hour   1,111
>
> 1-hour   1,111

Ozone (ug/m3)

1

```
> 8-hour   105
>
> 1-hour   157
```

Thanks,

Jon

```
------------------------------
Jonathan Torizzo
Senior Air Quality Scientist
Buys & Associates
300 E. Mineral Avenue Suite 10
Littleton, CO  80122-2655
tel:  303/781-8211
fax:  303/781-1167
jtorizzo@buysandassociates.com
www.buysandassociates.com
```