IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>*et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE, in his official capacity,<br><br>*et al.*<br><br>Defendants.<br><br>ENDURING RESOURCES, LLC,<br><br>Defendant-Intervenor. | Case No. 1:08cv00411 (LFO)<br>Hon. Louis Oberdorfer<br><br>Defendant and Defendant-Intervenor's Opposition and Cross Motion for Summary Judgment Due June 13, 2008 |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Plaintiffs Southern Utah Wilderness Alliance, Natural Resources Defense Council, and The Wilderness Society (collectively referred to as "SUWA") respectfully submit this reply memorandum in support of their motion to supplement the administrative record.

All the parties agree that "'judicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made.'" The Humane Soc'y v. Dep't of Commerce, 432 F. Supp. 2d 4, 14 (D.D.C. 2006) (quoting Envtl. Def. Fund v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981)).  See Memorandum in Support of Plaintiffs' Motion to Supplement the Record (SUWA Mem.) at 2; Federal Defendants' Opposition to Plaintiffs'

Motion to Supplement the Record (Fed. Opp.) at 3-5; Enduring Resources, LLC's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Supplement the Record and in Support of Enduring Resources LLC's Motion in the Alternative to Supplement the Record (Enduring Opp.) at 5. Likewise, all the parties agree that the Court of Appeals for the District of Columbia has described exceptions to this general rule that allow for supplementation of the record when "evidence arising after the agency action shows whether the decision was correct or not" or "in cases arising under the National Environmental Policy Act." See SUWA Mem. at 3 (quoting Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989)); Fed. Opp. at 5; Enduring Opp. at 7-8.[1] The question, therefore, is not whether there are exceptions to the record review rule; the parties all agree that there are. Rather, the issue is whether the two items that SUWA proposes to supplement the record with meet either or both of the Esch exceptions. Because they do, the Court should grant SUWA's motion.

SUWA seeks to supplement the record to show that the Bureau of Land Management's (BLM's) background figure for the 24-hour maximum average of $PM_{2.5}$ – a criteria pollutant – was arbitrary and capricious. SUWA provided BLM with background figures for the 24-hour maximum average of $PM_{2.5}$ that were more accurate and representative than the information

---

[1] The parties also agree that this Court will evaluate the federal defendants' decision at issue here – the Rock House Decision Record and Finding of No Significant Impact – using an arbitrary and capricious standard of review. See Plaintiffs' Memorandum in Support of Motion for Summary Judgment at 10; Fed. Opp. at 8-9; Enduring Opp. at 8. Enduring Resources, LLC (Enduring) and the federal defendants attempt to seize on language in Esch to argue that this Court is not empowered to determine whether the Bureau of Land Management's (BLM's) decision was "correct." 876 F.2d at 991. See Fed. Opp. at 8-9; Enduring Opp. at 9. Rather, they argue, the Court must apply the arbitrary and capricious standard of review and it should not be in the business of determining whether BLM's actions were correct or "accurate." BLM Opp. at 8-9; Enduring Opp. at 9. Enduring and the federal defendants read Esch too literally in an attempt to cabin its intent. Whether BLM's decision was correct or not certainly bears on whether its actions were arbitrary and capricious. See, e.g., Wis. Valley Improvement v. Fed. Energy Regulatory Comm'n, 236 738, 742 (D.C. Cir. 2001) (stating that an arbitrary and capricious determination would require an evaluation of the correctness of a federal agency's conclusion). Cf. La. Fed. Land Bank Ass'n, FLCA v. Farm Credit Admin., 336 F.3d 1075, 1085 (D.C. Cir. 2003) (discussing, in the context of remedies, that the correctness of an agency decision can be an aspect of an arbitrary and capricious finding).

BLM cited in making its decision. SUWA's information on background figures came from actual monitoring performed in 2006 and 2007 in the Uintah Basin and showed substantially higher background levels than what BLM suggested to be the case. Instead, BLM relied exclusively on an email estimating background concentrations from a State of Utah employee in 2005 <u>intended for an entirely different project</u>. Importantly, this was an estimate – not a figure derived from actual monitoring – that the State of Utah has now disclaimed.

In summary, BLM has relied on an estimate – rejected by the State of Utah, but which one employee provided in an e-mail for a different project – from 2005 for these background figures rather than monitoring taken from the Uintah Basin itself as recently as 2007. Since the state's disavowal was only made known to the public recently in its April 28, 2008 letter and it is important to establishing that BLM's decision was arbitrary and capricious, the Court should grant SUWA's motion to supplement the record.

## **ARGUMENT**

### **I.   THE STATE OF UTAH'S APRIL 28, 2008 LETTER.**

There is a clear nexus between the State of Utah's April 28, 2008 letter to the BLM regarding the background concentration figure of $PM_{2.5}$ set forth in the West Tavaputs Plateau Natural Gas Full Field Development Plan, Draft Environmental Impact Statement, UT-070-05-055 (West Tavaputs DEIS) and the Rock House project at issue here.[2]

---

[2] The state's letter was sent by its Public Lands Policy Coordinating Office (PLPCO) and signed by its director, John Harja. <u>See</u> SUWA Br. Ex. 1. According to its website, PLPCO "coordinates the state's interests on public lands issues and acts to ensure that state and local interests are considered in the management of public lands." Governor's Public Lands Policy Coordination Office, About Us, http://governor.utah.gov/publiclands/default.htm (viewed on June 2, 2008). The state's letter directs questions about its contents to either Mr. Harja or Mr. Jonathan Jemmings, the director of the state's Resource Development Coordinating Committee (RDCC). <u>See</u> Governor's Office of Planning and Budget, Resource Development Coordinating Committee – RDCC, http://governor.utah.gov/planning/rdcc.htm (viewed on June 2, 2008). The RDCC "coordinates the review of technical and policy actions that may affect the physical resources of the state and facilitates the exchange of information on those actions among federal, state, and local government agencies." <u>Id.</u>

There is no dispute that the same third party contractor that prepared the West Tavaputs DEIS – Buys & Associates – also prepared the Enduring Resources' Saddletree Draw Leasing and Rock House Development Environmental Assessment UT-080-07-671 (Rock House EA). See SUWA Mem. at 4; Enduring Opp. at 2, 4.  There is likewise no dispute that Buys & Associates supplied the background concentration figure of 25 micrograms per cubic meter ($\mu g/m^3$) for the 24-hour maximum average of $PM_{2.5}$ cited in both the West Tavaputs DEIS and the Rock House EA.  According to Enduring, this figure was provided by a State of Utah employee in a November 30, 2005 e-mail in response to an inquiry from Buys & Associates <u>for an entirely different project</u>: "[t]he background concentrations were provided by [the Utah Division of Air Quality] to Buys & Associates in 2005 <u>for another project that Buys was working on unrelated to the Rock House EA</u>." Enduring Opp. at 3 n.2 (emphasis added).  This last point was not revealed until Enduring filed its opposition brief to SUWA's motion to supplement and is not clear on the face of the e-mail.  BLM did not include the November 30, 2005 e-mail in the administrative record provided to SUWA and the Court, though BLM has indicated that it intends to supplement the record with the e-mail shortly.  Fed. Opp. at 3 & n.1.  See Enduring Opp. at 3 n.2.

The state's April 28, 2008 letter to the BLM regarding the West Tavaputs DEIS states that "<u>background concentrations of $PM_{2.5}$ were not provided by the [Utah Division of Air Quality], but there is a value listed for it.</u>" SUWA Mem. Ex. 1 (State of Utah, Office of the Governor, Public Lands Policy Coordination, Subject: West Tavaputs Plateau Natural Gas Field Development Plan, Draft Environmental Impact Statement (DEIS) Project No. 08-8885, at 3 (April 28, 2008)).  The implication of the state's letter is plain on its face.  The state did not consider an e-mail from one of its employees over two-and-a-half years ago to Buys &

4

Associates offering background concentrations for an unrelated project somewhere in the state to be an accurate source of information.

## II.     THE STATE'S LETTER BEARS ON WHETHER THE BLM'S DECISION WAS INCORRECT.

In The Humane Soc'y v. Dep't of Commerce, the court permitted the plaintiffs to supplement the record with a letter and a Federal Register notice because those items had "a direct bearing on the correctness of the agency's decision," and which were "directly relevant" to the plaintiffs' legal claim that an environmental impact statement should have been prepared. 432 F. Supp. 2d at 14-15.  See Esch, 876 F.2d at 991 (listing exception to the record review rule, including "where evidence arising after the agency action shows whether the decision was correct or not."); Nat'l Trust for Historic Pres. v. Blanck, 938 F. Supp. 908, 915 n.10 (D.D.C. 1996) (citing Esch and permitting plaintiffs to supplement the record with affidavits that bore on whether the defendants actions were correct).  Here, the state's April 2008 letter bears directly on whether the BLM's use of the 25 µg/m$^3$ figure for the 24-hour maximum average (background concentration) of $PM_{2.5}$ was arbitrary, as SUWA has alleged.  As explained above, the connections between the West Tavaputs DEIS and the Rock House EA are many: the same contractor prepared both documents, the same $PM_{2.5}$ background concentration figure is used in both documents, and both documents cite the same source for that figure – an e-mail from a state employee to Buys & Associates for an entirely unrelated project.  That the state's letter was prepared after the Rock House EA was approved does not diminish its relevance and the use of this document does not constitute "Monday morning quarterbacking" as the federal defendants complain. Fed. Opp. at 9.  This is precisely the circumstance that the Esch court set-forth as an exception to the record rule and that other courts have followed.  See 876 F.2d at 991.

5

Enduring asserts that the state's letter "does not directly 'discredit' the background concentrations relied upon in the West Tavaputs DEIS," and that the letter "lack[s] any bearing on whether the agency acted arbitrarily or capriciously in reaching its decision." Enduring Opp. at 6, 8. Both of these arguments fail. As to Enduring's first complaint, Esch and its progeny do not require that state's April 2008 letter "directly discredit" the Rock House EA, only that it bear on the issue of whether the BLM's decision was correct. See 876 F.2d at 991. Likewise, Enduring's second argument that the state's letter "lack[s] any bearing" on the arbitrariness of BLM's decision goes too far. The many connections between the West Tavaputs DEIS and the Rock House EA make the state's letter particularly relevant to understanding whether there was a basis for BLM to rely on the 25 µg/m$^3$ background figure for the 24-hour maximum average of PM$_{2.5}$.

The federal defendants assail SUWA for challenging the Rock House EA's PM$_{2.5}$ background concentration figure, but not offering a figure of its own for what the background concentration should be. Fed. Opp. at 7. See also Enduring Opp. at 6-7 (suggesting that the state's letter did not entirely discredit background concentration for PM$_{2.5}$ used in the West Tavaputs DEIS because, in part, there was no suggestion as to what the proper background figure should be). SUWA, however, informed BLM that the Rock House EA's PM$_{2.5}$ background concentration figure was too low and needed to be revised upwards to 63.3 µg/m$^3$ or 55.7 µg/m$^3$ based on monitoring results from the only PM$_{2.5}$ monitor in the Uintah Basin. See AR 11494. This is a critical point: BLM had better, more accurate information on which it could rely in determining the background concentrations of the 24-hour maximum average of PM$_{2.5}$ for the project area and those areas that would be affected by the project.

Both the federal defendants and Enduring narrowly read Esch and subsequent district court decisions to limit them to their particular facts. See Fed. Opp. at 5, 8; Enduring Opp. at 10-12. Because this case does not involve Steller sea lions or the Agriculture Adjustment Act, their argument goes, Esch's exception permitting post-decision evidence does not apply. See Fed. Opp. at 5, 8; Enduring Opp. at 10-12. The Court should reject these crabbed readings. Just like the letter from an assistant administrator of the National Marine Fisheries Service in Humane Soc'y which undercut the agency's decision not to prepare an environmental impact statement, the State of Utah's April 2008 letter to the BLM regarding the West Tavaputs DEIS directly bears on whether BLM's use of the same background concentration figure in the Rock House EA – which was consistently challenged by SUWA as being too low – was arbitrary. See 432 F. Supp. 2d at 14. See also Nat'l Trust for Historic Pres., 938 F. Supp. at 916 n.10 (permitting supplementation of the record, citing to Esch's post-decision exception). The Court should thus grant SUWA's motion to supplement the record with the state's letter and the excerpts to the West Tavaputs DEIS cited therein.

**III.   SUPPLEMENTATION WITH THE STATE'S LETTER IS APPROPRIATE UNDER ESCH'S NEPA EXCEPTION.**

Courts have more frequently allowed for record supplementation in agency NEPA cases than in other agency review cases. Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997). This happens because NEPA imposes a duty on "federal agencies to compile a comprehensive analysis of the potential environmental impacts" of their proposed actions and courts are frequently required to look outside the record to determine if this has happened. Id. at 14-15. If courts could not look outside the record then in some circumstances it would "make judicial review meaningless and eviscerate the very purposes of NEPA." Id. at 15. For this

reason courts have been willing to consider supplemental information in the NEPA context.  See, e.g., id. at 14-15; Atchison, Topeka & Santa Fe Ry. Co. v. Callaway, 459 F. Supp. 188, 192-93 (D.D.C. 1978) (permitting an evidentiary hearing in a NEPA administrative record review case because the court reasoned that such supplemental information was necessary to determine if agency had fully complied with NEPA); Suffolk County v. Sec'y of the Interior, 562 F.2d 1368, 1384 (2d Cir. 1977) (stating that in NEPA cases "primary function of the court is to insure that the information available to the decision-maker includes an adequate discussion of environmental effects and alternatives … which can sometimes be determined only by looking outside the administrative record to see what the agency may have ignored"); Nat'l Audubon Soc'y v. U.S. Forest Serv., 46 F.3d 1437, 1447-48 (9th Cir. 1993) (allowing for record supplementation in a NEPA case and stating that such supplementation may be allowed in NEPA cases to deal with issues where an agency "neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism under the rug") (citations omitted); Sabine River Auth. v. U.S. Dep't of Interior, 951 F.2d 669, 678 (5th Cir. 1992) (writing that courts may review evidence from outside the record to determine if an agency has complied with NEPA).

In the present matter the record does not properly disclose the weakness of BLM's position regarding background levels of $PM_{2.5}$ in the project area.  The supplemental information provided by SUWA supports its argument that BLM's decision to rely on a $PM_{2.5}$ 24-hour maximum average concentration of 25 µg/m³ in the project area was arbitrary and capricious.

## **CONCLUSION**

For the reasons set forth above and in SUWA's Memorandum in Support of its Motion to Supplement the Record, the Court should grant plaintiffs motion to supplement the record with

the State of Utah's April 28, 2008 letter to the BLM and excerpts from the West Tavaputs DEIS referred to in the state's letter.

    /s/ Sharon Buccino
Sharon Buccino (DC Bar # 432073)
Natural Resources Defense Council
1200 New York Ave., NW, Suite 400
Washington, DC  20005
T:  202-289-6868
F:  202-289-1060
sbuccino@nrdc.org

Stephen H.M. Bloch (admitted *pro hac vice*)
David Garbett
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, UT  84111
T:  801-486-3161
F: 801-486-4233
steve@suwa.org

*Counsel for Plaintiffs*

Dated:  June 2, 2008