IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, *et al.*, <br><br>　　　Plaintiffs, <br><br>　　v. <br><br>DIRK KEMPTHORNE, in his official capacity, *et al.* <br><br>　　　Defendants. <br><br>ENDURING RESOURCES, LLC, <br><br>　　　Defendant-Intervenor. | Case No. 1:08cv00411 (LFO) <br> Hon. Louis Oberdorfer <br><br> Defendant and Defendant-Intervenor's Opposition and Cross Motion for Summary Judgment Due June 13, 2008 |

### PLAINTIFFS' RESPONSE TO ENDURING RESOURCES, LLC'S MOTION IN THE ALTERNATIVE TO SUPPLEMENT THE RECORD

Plaintiffs Southern Utah Wilderness Alliance, Natural Resources Defense Council, and The Wilderness Society (collectively referred to as "SUWA") respectfully submit this memorandum in response to Enduring Resources, LLC's (Enduring's) motion in the alternative to supplement the administrative record.

Although SUWA does not oppose Enduring's motion in the alternative to supplement the record, the information that Enduring seeks to add to the record offers little of value to the Court. The Enduring Resources' Saddletree Draw Leasing and Rock House Development Environmental Assessment (Rock House EA) and the Bureau of Land Management's (BLM's) subsequent decision record and finding of no significant impact (FONSI) at issue here relied on a

single email from 2005 for the background concentration of the pollutant $PM_{2.5}$ in the project area. SUWA provided BLM with monitoring data from the Uintah Basin showing that $PM_{2.5}$ background concentrations were much higher than what the Rock House EA was reflecting. BLM rejected this information in favor of modeling information that was supposedly provided for this project by the State of Utah in a 2005 email. However, subsequent information has shown that this email was never intended for the Rock House project and that the State of Utah has renounced that modeling.

Enduring's supplemental information does nothing to refute any of this or to show that BLM's Rock House decision was not arbitrary and capricious. Instead, Enduring's information involves a decision by BLM's Utah State Director on an entirely different project – the Record of Decision and Final Environmental Impact Statement, Greater Deadman Bench Oil and Gas Producing Region, Questar Exploration and Production Company (2008) (GDBR EIS). The GDBR EIS relied on the same 2005 email for the background concentration of the pollutant $PM_{2.5}$ as the Rock House EA in which the State Director almost certainly did not know that the modeling in the 2005 email was never intended for that project, let alone the Rock House project. For this reason, the supplemental information offered by Enduring is of little use to the Court.

## ARGUMENT

### THE STATE DIRECTOR'S DECISION AFFIRMING THE GDBR EIS OFFERS NO HELP TO THIS COURT IN DECIDING WHETHER BLM ACTED ARBITRARILY AND CAPRICIOUSLY

Enduring now seeks to supplement the record with a decision by the Utah BLM State Director affirming the BLM Vernal Field Office's Record of Decision and GDBR EIS. See Enduring Resources, LLC's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Supplement the Record and in Support of Enduring Resources LLC's Motion in the

Alternative to Supplement the Record (Enduring Opp.) at 14. SUWA agrees that at times supplementation of the administrative record may be appropriate. See Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (allowing for supplementation of the record in certain circumstances, for example when "evidence arising after the agency action shows whether the decision was correct or not"). However, SUWA disagrees with Enduring that this information will be of use to the Court; it will not.

The GDBR EIS analyzes a proposal, submitted by Questar Exploration and Production Company, to drill up to 1,020 natural gas wells and 348 oil wells in the central Uintah Basin. See Enduring Opp. Ex. E at 1-2; Enduring Opp. Ex. D at 2-1. The Record of Decision approving this project was issued by the Vernal Field Office on March 31, 2008. Enduring Opp. Ex. E at 12. The State Director later affirmed this project in the face of a challenge by one of the plaintiffs here. See Enduring Opp. Ex. F. Importantly, this is the same State Director whose decision is being challenged in this case. See Plaintiffs' Memorandum in Support of Motion for Summary Judgment at 9-10.

Most important, however, is the fact that in his review of the GDBR EIS the State Director never had a chance to consider the recent admission of Enduring that the State of Utah's 2005 email – which was the basis for the $PM_{2.5}$ background concentrations in the GDBR EIS and the Rock House EA – was a response to an inquiry from Buys & Associates, the contractor who prepared the GDBR EIS and the Rock House EA, for an entirely different project: "[t]he background concentrations were provided by [the Utah Division of Air Quality] to Buys & Associates in 2005 for another project that Buys was working on unrelated to the Rock House EA." Enduring Opp. at 3 n.2 (emphasis added).

3

The State Director's decision affirming the GDBR EIS and Record of Decision dismissed a letter provided by the State of Utah in 2008 renouncing the $PM_{2.5}$ background concentrations used in the West Tavaputs Plateau Natural Gas Full Field Development Plan, Draft Environmental Impact Statement (West Tavaputs DEIS).  See Enduring Opp. Ex. F at 4.  This is the letter that SUWA is seeking to supplement the record with in the present matter.  See Memorandum in Support of Plaintiffs' Motion to Supplement the Record (SUWA Mem.) Ex. 1.  The state's 2008 letter declared that "background concentrations of $PM_{2.5}$ were not provided by the [Utah Division of Air Quality], but there is a value listed for it" in the West Tavaputs DEIS.  Id.  As previously explained, this letter is important because it demonstrates the figures used for $PM_{2.5}$ background in the Rock House EA are not supported by the State of Utah, the entity that supposedly provided them for the Rock House EA.  See SUWA Mem. at 3-5; Plaintiffs' Reply in Support of Motion to Supplement the Administrative Record (SUWA Reply) at 3-7.  The State Director's dismissal of this letter in his review of the GDBR EIS was arbitrary and capricious and had numerous flaws.

If the Court wished to rely on the State Director's reasoning for rejecting this letter, it would require a determination that the Director's decision in the GDBR EIS was not arbitrary and capricious as it is not part of this record.  Cf. Envtl. Def. Fund v. Costle, 657 F.2d 275, 283 (D.C. Cir. 1981) (explaining that arbitrary and capricious review, which is a deferential standard, requires that courts examine an administrative record to see if the agency's conclusion represents reasoned decisionmaking).   There is no administrative record for the Court to review in terms of the GDBR EIS, thus it cannot evaluate the reasonableness of the State Director's conclusions and it owes them no deference.  Cf. id.

Enduring's recent admission, however, makes all of this unnecessary. Enduring's admission – that the 2005 email from the state providing $PM_{2.5}$ background information for a project "unrelated to the Rock House EA" – was never presented to or considered by the State Director in his review of the GDBR EIS. See Enduring Opp. at 3 n.2 (admitting that data was not intended for Rock House EA); Enduring Opp. Ex. F. (never mentioning this fact or acknowledging it). Thus the State Director's decision on the GDBR EIS would not help the Court in determining now whether it was arbitrary and capricious for BLM to establish a $PM_{2.5}$ background concentration figure in its Rock House EA based solely on a 2005 email – not intended for the Rock House EA and subsequently renounced by the State of Utah – while ignoring monitoring data provided by SUWA from the Uintah Basin.

## CONCLUSION

For the reasons set forth above the information provided by Enduring offers little help to the Court. The supplemental information offered by Enduring fails to show that BLM's reliance in the Rock House EA on a single email from 2005 for $PM_{2.5}$ background concentrations, an email which the State of Utah has renounced and which was never intended for this project, and its subsequent rejection of air quality monitoring data for $PM_{2.5}$ provided by SUWA was anything other than arbitrary and capricious.

           /s/ Sharon Buccino
           Sharon Buccino (DC Bar # 432073)
           Natural Resources Defense Council
           1200 New York Ave., NW, Suite 400
           Washington, DC  20005
           T:  202-289-6868
           F:  202-289-1060
           sbuccino@nrdc.org

                                        Stephen H.M. Bloch (admitted *pro hac vice*)
                                        David Garbett
                                        Southern Utah Wilderness Alliance
                                        425 East 100 South
                                        Salt Lake City, UT  84111
                                        T:  801-486-3161
                                        F: 801-486-4233
                                        steve@suwa.org

                                        *Counsel for Plaintiffs*

Dated:  June 3, 2008